**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HELFERICH PATENT LICENSING, LLC, | ) | |
| an Illinois Limited Liability Company, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:11-cv-07607 |
| | ) | |
| CBS CORPORATION, | ) | |
| a Delaware Corporation, | ) | |
| Defendant. | ) | (Jury Trial Demanded) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Helferich Patent Licensing, LLC ("HPL"), by and through its undersigned counsel, complains against CBS Corporation ("CBS") as follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. §§ 101-376, including 35 U.S.C. § 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action arising out of the patent laws of the United States of America.

## JURISDICTION AND VENUE

2.     This Court has personal jurisdiction over Defendant because Defendant conducts substantial and continuous business in the State of Illinois and in this District, including maintaining its offices for WBBM-TV located in the Chicago, IL, and purposefully directs its infringing activities to residents of this State and District by

causing infringing messages to be sent to residents of this State and District, as described more fully in the paragraphs hereafter.

3.     Venue is appropriate pursuant to 28 U.S.C. § 1391(c) and 1400(b) because, among other reasons, Defendant is subject to personal jurisdiction in this District, and has caused infringing messages to be sent to residents of this State and District.

## PLAINTIFF

4.     HPL is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602.  HPL is the exclusive licensee of twenty-five (25) U.S. patents, eleven (11) pending U.S. applications, and over a dozen related foreign patents and patent applications all relating to mobile wireless communication devices and the provision of media and content to such devices (collectively the "HPL Portfolio").  The HPL Portfolio includes the patents and applications listed in Exhibit A.

5.      On November 16, 2010, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'757 patent"). HPL is the exclusive licensee of all right, title, and interest in the '757 patent.

6.     The '757 patent provides for methods and systems relating to wireless messaging to mobile devices.  More particularly, the patent includes claims that relate to, among other things, the transmission of notification messages to mobile devices that include identifiers (such as a URL) that identify content available for download.  Other

2

claims relate to notifications that identify content that is updated or changed prior to the content being sent to the mobile user in response to a request for such content. Examples of such notifications include SMS messages that include an identifier of content (such as a URL) in the message, and where the identified content is updated and/or changed by the content provider between the time the notification is sent and the time the content is requested. Yet another set of claims relates to notifications that indicate the time the identified content is to be available. Examples of such notifications include MMS notifications or an SMS message that includes an identifier of content (such as a URL) as well as an indication of the time the content is to be available (such as text indicating a "24 hour sale") and where the identified content is either removed or changed after the expiration of the time period specified in the notification.. The '757 patent also includes claims relating to the transmission of notification messages to mobile devices that include acknowledgement requests. Examples of such notifications include MMS notifications that include requests for delivery reports.

7.      On March 3, 2009, the Patent Office issued Patent No. 7,499,716 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'716 patent"). HPL is the exclusive licensee of all right, title, and interest in the '716 patent.

8.      The '716 patent provides for methods and systems that relate to wireless messaging to mobile devices. More particularly, the patent includes claims that relate to, among other things, the transmission of notification messages to mobile devices that

include identifiers (such as a URL) that identify content available for download. Other claims relate to notifications that indicate the time the identified content is to be available. An example of such a notification is an MMS or SMS notification that includes an identifier of content (such as a URL) as well as an indication of the time the content is to be available (such as text indicating a "24 hour sale") and where the identified content is either removed or changed after the expiration of the time period specified in the notification. The '757 patent also includes claims relating to the transmission of notification messages to mobile devices from which content providers can receive commands to perform on the content. Examples of such notifications include MMS notifications in response to which various commands to perform on content, such as a "reply" command, "forward" command, or "delete" command, are received.

9.      On October 9, 2007, the Patent Office issued Patent No. 7,280,838 entitled "Paging Transceivers and Methods for Selectively Retrieving Messages" (the "'838 patent"). HPL is the exclusive licensee of all right, title, and interest in the '838 patent.

10.      The '838 patent provides for methods and systems relating to wireless messaging to mobile devices. More particularly, the '838 patent includes claims that relate to, among other things, the transmission of notification messages to mobile devices that include identifiers (such as a URL) that identify content available for download. Examples of such notifications include SMS or MMS messages that include an identifier of content (such as a URL) in the message.

4

11.    On December 26, 2006, the Patent Office issued Patent No. 7,155,241 entitled "Systems and Methods for Enabling a User of a Communication Device to Manage Remote Information" (the "'241 patent").  HPL is the exclusive licensee of all right, title, and interest in the '241 patent.

12.    The '241 patent provides for methods and systems relating to wireless messaging to mobile devices.  More particularly, the '241 patent includes claims that relate to the transmission of notification messages to mobile devices that include acknowledgement requests.  Examples of such notifications include MMS notifications, which include requests for delivery reports.

13.    On July 14, 2010, HPL filed suit against New York Times Company asserting infringement by the New York Times Company of threeof the patents asserted herein: the '757 patent, the '716 patent, and the '838 patent.  Approximately six (6) months later (in late February 2011), New York Times Company filed three (3) *ex parte* reexaminations in the Patent Office, one for each of these three asserted patents.   While all three reexaminations are still under review, the Patent Office has ***confirmed as patentable*** the following claims without amendment:

- Reexamination SN 90/009,882 (corresponding to the '757 patent): 1, 6, 11, 18, 19, and 20 (all other claims are still under review).
- Reexamination SN 90/009,880 (corresponding to the '716 patent): claims 2, 16, 22, 23, 31, 34, 35, 38, 39, 43, 48, 49, 52, and 58 (all other claims are still under review).

14.    In addition, HPL recently received Notices of Allowance for pending applications Serial Nos. 11/598,202, 12/167,971, and 12/367,358, all of which were

allowed by the Patent Office over express consideration of art and arguments present by New York Times Company in the aforementioned *ex parte* reexamination requests. HPL anticipates amending this Complaint to add allegations of infringement of the allowed claims, once issued.

15. To date, more than eighty-five (85) of the world's most sophisticated companies have agreed to a license to the HPL Portfolio. Licensees include: ABInBev (Anheuser Busch), Adidas/Reebok, ADT Securities, Advanced Publications (Condé Nast), Ally Bank, Amazon, American Eagle Outfitters, American Greetings, Apple, Carnival Cruise Lines, Coinstar, Dairy Queen, Dell, Disney, eBay, Epitaph Records, Glu Mobile, GSI Commerce (owned by eBay), Hair Cuttery, Harley-Davidson, Hewlett-Packard (and Palm), H&R Block, KGB, Macy's, McDonald's, MGM Resorts International, Microsoft, Motorola Mobility, the National Football League, the National Hockey League, Newegg.com, Qdoba Restaurants, Redbox, Research in Motion, Sears Holding Corporation, Shoptext, Starbucks, Steve Madden, Taco Bell, Toyota, World Wrestling Entertainment, Walgreens, Yamaha, Zuffa/UFC and numerous other companies including those whose identities HPL has agreed to keep confidential.

## **The Defendant**

16. Defendant CBS is a Delaware corporation with its principal place of business in New York City, New York. CBS is an entertainment company comprised of television networks and studios, cable networks, publishing, and local broadcasting. CBS broadcasts reach millions of viewers throughout the country, including in Chicago,

6

Illinois.  Moreover, CBS purposefully directs its infringing activities (described below) to residents of this State and District by causing infringing messages to be sent to residents of the State of Illinois and this District.

17.     Within the last six (6) years, CBS has initiated and caused numerous infringing messages to be sent in connection with at least the following product and service offerings:

a)     CBS provides alerts to its customers' mobile devices via SMS messaging, whereby CBS causes infringing messages to be sent to its customers' mobile devices alerting its customers of programming and other offerings that often include an identifier of content (such as a URL) within the notification.  Moreover, such notifications often link to dynamic content (e.g., content that is changed between the time of the original notification and the time such content is requested), as well as indicate the time the identified content is to be available.   For example, in October, 2011, CBS sent a message to its mobile alert subscribers via SMS pertaining to a news story form the CBS Program *Entertainment Tonight*.   The SMS message linked to the mobile website for *Entertainment Tonight*.  Figure 1, below, shows the message, and Figures 2 and 3 show that the content is dynamic because the content was different when accessed at two different times.





**Figures 1, 2, and 3.**

Figure 1 provides an example of an SMS message created and caused to be delivered by CBS containing a specific URL identifying the CBS content shown in Figures 2 and 3, which CBS delivered to a mobile phone upon a request (using the provided URL) to do so. Figure 2 shows the content when first accessed, and Figure 3 shows the content when accessed at a later time with an additional comment.



(b)    CBS also provides alerts to its customers' mobile devices via MMS messaging, whereby CBS causes infringing messages to be sent to its customers' mobile devices alerting its customers of programming and other offerings that often include an identifier of content (such as a URL) within the notification.    Further, these MMS messages include acknowledgement requests, include an indication of the time the MMS content is available, and enable CBS to receive commands to perform on the content.   For example, on May 3, 2010, CBS sent a mobile alert to its subscribers via MMS messaging that included a slideshow for CBS's "Entertainment Tonight" program.   Figures 4-6, below, show the message and the content.





**Figures 4-6.** CBS initiated the above MMS message to a mobile user containing a slide show including the two photographs pictured.

(c)     CBS also causes infringing messages to be sent through its various social media websites.   For example, in conjunction with its @CBSNews Twitter feed, CBS causes thousands, if not millions, of infringing messages to be sent via SMS to its "followers" daily, as shown below in Figures 7 and 8.   Many of the messages indicate the time the content is available, and others contain identifiers to dynamic content where the content is changed between the time of the notification and the time the content is requested by CBS's customers.



**Figures 7 and 8**  An @CBSNews Twitter feed alert received via SMS messaging, and associated with the content identified by http://t.co/EUYaPOUB.

18.     On or about June 2, 2010, HPL gave written notice to CBS of its infringement of the '716, '838, and '241 patents.  The notice letter provided CBS with a detailed description of the claims, and in addition, provided detailed information including infringement charts demonstrating infringement of the claims.  On or about January 18, 2011, HPL gave written notice to CBS of its infringement of the '757 patent, which had not issued at the time of HPL's initial letter to CBS.  The June 2, 2010 notice letter provided CBS with a detailed description of the claims of the '757 patent (then pending application 12/764,025), and in addition, provided detailed information including infringement charts demonstrating infringement of the claims.

19.     For the past sixteen (16) months, CBS has continued to infringe HPL's patents while repeatedly refusing to accept a license on HPL's well-established and reasonable licensing terms.  CBS refused a license even in the face of the Patent Office both confirming existing claims and allowing new claims over express consideration of the prior art and arguments proffered by New York Times Company and others now cooperating with New York Times Company.  More specifically:

(a)     <u>Following Notice, CBS Ignored HPL for Eight (8) Months</u>:  As mentioned above, HPL first provided CBS with written notice of its infringement in June 2010. Thereafter, HPL periodically wrote to CBS inviting CBS to once again consider a license (or, in the alternative, to present defenses) and to provide CBS with periodic updates regarding HPL's ongoing licensing, litigation and patent prosecution efforts. Specifically, HPL sent letters to CBS on July 16, 2010, November 1, 2010, January 18,

2011, March 30, 2011, and May 24, 2011, respectively. Notwithstanding HPL's detailed notice letter and many subsequent communications, CBS completely ignored HPL until February 2, 2011—some eight (8) months after HPL's first communication—at which time CBS tersely stated that it was still "reviewing" the matter.

(b)     CBS Continued to Refuse a License After New York Times Filed its Ex Parte Reexaminations:  As discussed above, in late February 2011, New York Times filed its three (3) ex parte reexaminations on the '757, '716, and '828 patents. Promptly thereafter, on March 30, 2011, HPL advised CBS of the reexaminations and provided CBS with a detailed analysis explaining why HPL believed a large number of claims were likely to be confirmed. Notwithstanding HPL's analysis and the fact that the reexaminations did not cover all of the patents asserted to be infringed by CBS (including, the '241 patent), CBS continued to refuse a license and to infringe HPL's patents.

(c)     CBS Continued to Refuse a License After the PTO Confirmed Claims:  As previously mentioned, in the third quarter of 2011, the Patent Office confirmed as patentable numerous infringed claims in two (2) of the pending *ex parte* reexamination proceedings over express consideration of New York Times Company's invalidity arguments, including many of the claims asserted to be infringed in this Complaint. Notwithstanding the Patent Office confirming many of the claims asserted in this Complaint, CBS continued to refuse a license and to infringe HPL's patents.

(d)     CBS Continued to Refuse a License After the Filing of *Inter Parte* Reexaminations on Less than All Asserted Claims:     On September 6, 2011, after the Patent Office confirmed and allowed numerous infringed claims of HPL's patents and applications over New York Times Company's invalidity arguments, CBS's wholly owned subsidiary, CBS Interactive, Inc., joined with several other companies (including New York Times Company) in filing yet another round of reexamination requests for the '757, '716, and '838 patents.  HPL believes that these most recent reexamination requests present cumulative arguments and include numerous items of prior art already considered by the Patent Office.   In addition, the new reexamination requests fail to seek reexamination of all claims asserted to be infringed by CBS, including ***at least*** asserted claim 1 of the '757 patent, claims 38 and 39 of the '716 patent, and claims 1, 2, 10, 13, 14, 38, 39, 40, 41, 42, 53, 54, 71, 72, 80, 84, and 85 of the '241 patent.  Notwithstanding the most recent reexamination requests presenting cumulative arguments and failing to seek reexamination of all claims asserted herein, CBS continues to refuse a license and to infringe the asserted patents.

## COUNT I
### (Infringement of United States Patent No. 7,835,757 via SMS)

20.     HPL incorporates by reference Paragraphs 1 through 19 of this Complaint and realleges them as though fully set forth herein.

21.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among

other things, using and practicing methods that embody one or more of at least claims 1-20 of the '757 patent within the United States without authority or license from HPL. As mentioned previously, claims 1, 6, 11 and 18-20 of the '757 patent have been confirmed by the Patent Office in connection with New York Times Company's *ex parte* reexamination request.

22.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '757 patent because it causes SMS notifications of the type described in Paragraph 6 to be sent to its customers' mobile devices. HPL is informed and believes, and thereon alleges that Defendant infringes the '757 patent in connection with at least the product offerings and services described in Paragraph 17, above.

23.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '757 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 22 have been, and continue to be, sent to its customers' mobile devices.

24.     More specifically, Defendant has been on notice of its infringement of the '757 patent since January of 2011, and since that time large numbers of infringing SMS messages as described in Paragraph 22 have been, and continue to be, sent to Defendant's customers along with links to Defendant's content. HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as

alleged in Paragraph 22, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '757 Patent.

25.     In addition, having placed Defendant on notice of infringement of the '757 patent ten (10) months ago, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '757 patent has been and continues to be willful.

26.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT II
### (Infringement of United States Patent No. 7,499,716 via SMS)

27.     HPL incorporates by reference Paragraphs 1 through 19 of this Complaint and realleges them as though fully set forth herein.

28.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 15, 17, 18, 21, 22, 23, 27, 30, 38, and 39 of the '716 patent (and likely others) within the United States without authority or license from HPL.  As mentioned previously, claims

22, 23, 38, and 39 of the '716 patent have been confirmed by the Patent Office in connection with New York Times Company's *ex parte* reexamination request.

29.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent because it causes SMS notifications of the type described in Paragraph 8 to be sent to its customers' mobile devices.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent in connection with at least the product offerings and services described in Paragraph 17, above.

30.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '716 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 29 have been, and continue to be, sent to its customers' mobile devices.

31.     More specifically, Defendant has been on notice of its infringement of the '716 patent since June of 2010, and since that time large numbers of infringing messages as described in Paragraph 29 have been, and continue to be, sent to Defendant's customers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 29, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such

infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '716 Patent.

32.     In addition, having placed Defendant on notice of infringement of the '716 patent more than sixteen (16) months ago, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '716 patent has been and continues to be willful.

33.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**COUNT III**
**(Infringement of United States Patent No. 7,280,838 via SMS)**

34.     HPL incorporates by reference Paragraphs 1 through 19 of this Complaint and realleges them as though fully set forth herein.

35.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9, 10, 12, 13, 15, 16, 18, and 20 of the '838 patent (and likely others) within the United States without authority or license from HPL.  As mentioned previously, all claims of the '838 patent are currently under review by the Patent Office in connection with New York Time's *ex parte* reexamination request.

17

36.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent because it causes SMS notifications of the type described in Paragraph 10 to be sent to its customers' mobile devices.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent in connection with at least the product offerings and services described in Paragraph 17, above.

37.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '838 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 36 have been, and continue to be, sent to its customers' mobile devices.

38.     More specifically, Defendant has been on notice of its infringement of the '838 patent since June of 2010, and since that time large numbers of infringing messages as described in Paragraph 36 have been, and continue to be, sent to Defendant's customers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 36, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '838 Patent.

39.     In addition, having placed Defendant on notice of infringement of the '838 patent more than sixteen (16) months ago, HPL is informed and believes, and thereon alleges that Defendant's infringement of the '838 patent has been and continues to be willful.

40.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT IV
### (Infringement of United States Patent No. 7,835,757 via MMS)

41.     HPL incorporates by reference Paragraphs 1 through 19 of this Complaint and realleges them as though fully set forth herein.

42.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 2, 4, 5, 7-10, 12-16, and 18 of the '757 patent within the United States without authority or license from HPL.  As mentioned previously, claim 18 of the '757 patent has already been confirmed by the Patent Office in connection with New York Times Company's *ex parte* reexamination request.

43.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '757 patent because it causes MMS notifications of the type described in Paragraph 6

to be sent to its customers' mobile devices. HPL is informed and believes, and thereon alleges that Defendant infringes the '757 patent in connection with at least the product offerings and services described in Paragraph 17, above.

44.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '757 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c) because numerous MMS notifications of the type described in Paragraph 43 have been, and continue to be, sent to its customers' mobile devices.

45.     More specifically, Defendant has been on notice of its infringement of the '757 patent since January of 2011, and since that time large numbers of infringing messages as described in Paragraph 43 have been, and continue to be, sent to Defendant's customers along with links to Defendant's content. HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 43, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '757 Patent.

46.     In addition, having placed Defendant on notice of infringement of the '757 patent ten (10) months ago, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '757 patent has been and continues to be willful.

20

47.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT V
## (Infringement of United States Patent No. 7,499,716 via MMS)

48.     HPL incorporates by reference Paragraphs 1 through 19 of this Complaint and realleges them as though fully set forth herein.

49.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 15-18, 21-26, 28-33, and 37-43 of the '716 patent (and likely others) within the United States without authority or license from HPL.  As mentioned previously, claims 22, 23, 38 and 39 of the '716 patent have already been confirmed by the Patent Office in connection with New York Times Company's *ex parte* reexamination request.

50.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent because it causes MMS notifications of the type described in Paragraph 8 to be sent to its customers' mobile devices.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent in connection with at least the product offerings and services described in Paragraph 17, above.

21

51.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '716 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c) because numerous MMS notifications of the type described in Paragraph 50 have been, and continue to be, sent to its customers' mobile devices.

52.     More specifically, Defendant has been on notice of its infringement of the '716 patent since June of 2010, and since that time large numbers of infringing messages as described in Paragraph 50 have been, and continue to be, sent to Defendant's customers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 50, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '716 Patent.

53.     In addition, having placed Defendant on notice of infringement of the '716 patent more than sixteen (16) months ago, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '716 patent has been and continues to be willful.

54.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law.

HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT VI
### (Infringement of United States Patent No. 7,280,838 via MMS)

55.     HPL incorporates by reference Paragraphs 1 through 19 of this Complaint and realleges them as though fully set forth herein.

56.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9-12, and 15-20 of the '838 patent (and likely others) within the United States without authority or license from HPL.  As mentioned previously, all claims of the '838 patent are currently under review by the Patent Office in connection with New York Time's *ex parte* reexamination request.

57.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent because it causes MMS notifications of the type described in Paragraph 10 to be sent to its customers' mobile devices.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent in connection with at least the product offerings and services described in Paragraph 17, above.

58.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '838 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently

contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c) because numerous MMS notifications of the type described in Paragraph 57 have been, and continue to be, sent to its customers' mobile devices.

59.     More specifically, Defendant has been on notice of its infringement of the '838 patent since June of 2010, and since that time large numbers of infringing messages as described in Paragraph 57 have been, and continue to be, sent to Defendant's customers along with links to Defendant's content. HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 57, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '838 Patent.

60.     In addition, having placed Defendant on notice of infringement of the '838 patent more than sixteen (16) months ago, HPL is informed and believes, and thereon alleges that Defendant's infringement of the '838 patent has been and continues to be willful.

61.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT VII
## (Infringement of United States Patent No. 7,155,241 via MMS)

62.     HPL incorporates by reference Paragraphs 1 through 19 of this Complaint and realleges them as though fully set forth herein.

63.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '241 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 1, 2, 10, 13, 14, 38, 39, 40, 41, 42, 53, 54, 71, 72, 80, 84, and 85 of the '241 patent (and likely others) within the United States without authority or license from HPL.

64.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '241 patent because it causes MMS notifications of the type described in Paragraph 12 to be sent to its customers' mobile devices.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '241 patent in connection with at least the product offerings and services described in Paragraph 17, above.

65.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '241 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '241 patent in violation of 35 U.S.C. § 271(c) because numerous MMS notifications of the type described in Paragraph 64 have been, and continue to be, sent to its customers' mobile devices.

66.    More specifically, Defendant has been on notice of its infringement of the '241 patent since June of 2010, and since that time large numbers of infringing messages as described in Paragraph 64 have been, and continue to be, sent to Defendant's customers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 64, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '241 Patent.

68.    In addition, having placed Defendant on notice of infringement of the '241 patent more than sixteen (16) months ago, HPL is informed and believes, and thereon alleges that Defendant's infringement of the '241 patent has been and continues to be willful.

69.    As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

//

WHEREFORE, for the foregoing reasons, Helferich Patent Licensing, LLC, prays for:

(a)     Judgment that Defendant has infringed, actively induced others to infringe, or contributed to the infringement by others of one or more of the claims of the '757 patent, '716 patent, '838 patent, and '241 patent;

(b)     A permanent injunction to be issued enjoining and restraining Defendant and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and those in active concert and participation with them, and each of them, from making, using, selling, offering for sale, or importing any products, systems or methods which fall within the scope of one or more of the claims of the '757 patent, '716 patent, '838 patent, and '241 patent and from inducing or contributing to infringement of any such claims by others;

(c)     An award of damages against Defendant adequate to compensate HPL for past infringement of one or more of the claims of the '757 patent, '716 patent, '838 patent, and '241 patent together with interest and costs as fixed by the Court, such damages to be trebled because of the willful and deliberate character of the infringement;

(d)     Judgment that this case is "exceptional" under 35 U.S.C. § 285, and that HPL is entitled to an award of its reasonable attorneys' fees in the prosecution of this action; and

(e)     Such other and further relief as the Court may deem just and proper.

27

RESPECTFULLY SUBMITTED this 25th day of October, 2011.

LAW OFFICES OF STEVEN G. LISA, LTD.

By:___*/s/ Timothy Sperling*_____
          Timothy D. Sperling
          Attorney for Plaintiff

Steven G. Lisa (Ill. State Bar # 6187348)
Timothy Sperling (Ill. State Bar # 6283854)
Jon E. Kappes (Ill. State Bar # 6291678)
James D. Busch (Ill. State Bar # 6299217)
Mildred E. Park (Ill. State Bar # 6293523)
Donald J. Lisa (Ill. State Bar # 1673998)
Law Offices of Steven G. Lisa, Ltd.
55 West Monroe Street, Suite 3210
Chicago, Illinois 60603
Tel. & Fax: (312) 752-4357

Victoria Curtin (NDIL ID #010897)
Victoria Gruver Curtin, P.L.C.
14555 N. Scottsdale Rd., Ste. 160
Scottsdale, Arizona  85254
Tel.:  (480) 998-3547
Fax:  (480) 596-7956

Gerald D. Hosier (Ill. State Bar # 7059)
Law Offices Of Gerald D. Hosier, Ltd.
P.O. BOX 12354
ASPEN, CO 81612
Tel: (970) 920- 3475
Off: (970) 920-3475

### Exhibit A

1. U.S. Patent No. 7,957,695, entitled "Method for Integrating Audio And Visual Messaging;" issued June 7, 2011.

2. U.S. Patent No. 7,843,314, entitled "Paging Transceivers and Methods for Selectively Retrieving Messages;" issued November 30, 2010;

3. U.S. Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device,"  issued November 16, 2010;

4. U.S. Patent No. 7,627,305, titled "Systems and Methods for Adding Information to a Directory Stored in a Mobile Device" issued December 1, 2009.

5. U.S. Patent No. 7,499,716, titled "System and Method for Delivering Information to a Transmitting and Receiving Device" issued March 3, 2009.

6. U.S. Patent No. 7,403,787, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued July 22, 2008.

7. U.S. Patent No. 7,376,432, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued May 20, 2008.

8. U.S. Patent No. 7,280,838, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued October 9, 2007.

9. U.S. Patent No. 7,277,716, titled "Systems and Methods for Delivering Information to a Communication Device," issued October 2, 2007.

10. U.S. Patent No. 7,242,951, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued July 10, 2007.

11. U.S. Patent No. 7,155,241, titled "Systems and Methods for Enabling a User of a Communication Device to Manage Remote Information," issued December 26, 2006.

12. U.S. Patent No. 7,146,157, titled "Systems and Methods for Downloading Audio Information to a Mobile Device," issued December 5, 2006.

13. U.S. Patent No. 7,039,428, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued May 2, 2006.

14. U.S. Patent No. 7,003,304, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued February 21, 2006.

15. U.S. Patent No. 6,983,138, titled "User Interface for Message Access," issued January 3, 2006.

16. U.S. Patent No. 6,826,407, titled "System and Method for Integrating Audio and Visual Messaging," issued November 30, 2004.

17. U.S. Patent No. 6,696,921, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communications System," issued February 24, 2004.

18. U.S. Patent No. 6,636,733, titled "Wireless Messaging Method," issued October 21, 2003.

19. U.S. Patent No. 6,462,646, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communication System," issued October 8, 2002.

20. U.S. Patent No. 6,459,360, titled "Networks, Communication Systems, Transmitting and Receiving Devices and Methods for Transmitting, Receiving, and Erasing Stored Information," issued October 1, 2002.

21. U.S. Patent No. 6,259,892, titled "Pager Transceivers and Methods for Performing Action on Information at Desired Times," issued July 10, 2001.

22. U.S. Patent No. 6,253,061, titled "Systems and Methods for Delivering Information to a Transmitting and Receiving Device," issued June 26, 2001.

23. U.S. Patent No. 6,233,430, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued May 15, 2001.

24. U.S. Patent No. 6,097,941, titled "User Interface for Voice Message Access," issued August 1, 2000.

25. U.S. Patent No. 6,087,956, titled "Paging Transceivers and Methods for Selectively Erasing Information," issued July 11, 2000.

26. U.S. Patent Application No. 13/210, 223, titled "Wireless Messaging Systems and Methods."

27. U.S. Patent Application No. 13/109,437, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

28. U.S. Patent Application No. 13/109,389, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

29. U.S. Patent Application No. 12/973,722, titled "Wireless Messaging Systems and Methods."

30. U.S. Patent Application No. 12/580,189, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

31. U.S. Patent Application No. 12/367,358, titled "Content provision to subscribers via wireless transmission."

32. U.S. Patent Application No. 12/267,436, titled "Wireless Messaging System."

33. U.S. Patent Application No. 12/167,971, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

34. U.S. Patent Application No. 11/598,832, titled "Systems and Methods for Downloading Information to a Mobile Device."

35. U.S. Patent Application No. 11/598,202, titled "Wireless Messaging System."

36. U.S. Patent Application No. 10/958,731, titled "System and Method for Integrating Audio and Visual Messaging."